J-S77017-17
J-S77018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.S., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1187 MDA 2017 |

Appeal from the Order Entered June 27, 2017
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8527

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.S., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1164 MDA 2017 |

Appeal from the Order Entered June 27, 2017
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-8527

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 15, 2017**

J.L.S. ("Mother") and P.S. ("Father") appeal[1] from the order, entered in

the Court of Common Pleas of Luzerne County, terminating their parental

---

[1] We have consolidated the appeals filed at 1164 MDA 2017 and 1187 MDA 2017.  **See** Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, . . . the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

---

\*   Former Justice specially assigned to the Superior Court.

rights to N.M.S. ("Child"), DOB 10/14, pursuant to 23 Pa.C.S. § 2511(a)(2), (a)(5), (a)(8) and (b). After our review, we affirm.

Luzerne County Children and Youth Services (CYS) became involved due to Mother's alcohol use during pregnancy. After Child was born, both parents were involved in a domestic disturbance, and both parents were arrested. As a result of this disturbance, as well as parenting and alcohol and drug issues, Child was placed in emergency protective placement with foster parents on July 9, 2015. N.T. Termination Hearing, 5/26/17, at 5-6. Child has remained with foster parents since that time. *Id.* at 7. One year later, in July 2016, both parents were arrested for public drunkenness. N.T. Termination Hearing, 3/9/17, at 82.

On February 17, 2017, CYS filed petitions to involuntarily terminate Mother's and Father's parental rights to Child. The Honorable Jennifer L. Rogers held four hearings, from March through June of 2017. Mother and Father testified, as well as Paulette Patton, the assigned CYS caseworker, Alicia Singer, senior clinician at Community Counseling Services, Jeanne Zbierski, a therapist at Wyoming Valley Alcohol and Drug Services, Melissa Stambaugh, an outpatient counselor at Wyoming Valley Drug and Alcohol Services, Megan Kosik, a case manager in the Intensive Family Reunification Program for Family Service Association, and Maria Bertha, Esquire, Guardian *ad litem* for Child.

Following the hearings, the court entered an order terminating Mother's and Father's parental rights to Child. Both Mother and Father appealed. They

both claim the trial court abused its discretion or committed an error of law in terminating parental rights and in finding that Child's best interests would be served by termination.

In cases involving termination of parental rights, "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. . . . We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Z.P.*, *supra* at 1115-16 (internal quotations and citations omitted).

If the court finds grounds for termination under the statute have been established by clear and convincing evidence, 23 Pa.C.S. § 2511(a), the court must then consider the developmental, physical and emotional needs and welfare of the child and determine whether severing the parent-child relationship is in the child's best interests.  *See* 23 Pa.C.S. § 2511(b)*.  See also In re: Adoption of T.B.B.*, 835 A.2d 837 (Pa. Super. 2003).

Here, CYS sought involuntary termination of both Mother's and Father's parental rights on the following grounds:

§ 2511.  Grounds for involuntary termination

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*    \*    \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance

- 4 -

reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*     \*     \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*     \*     \*

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

Parental rights may be involuntarily terminated where any one subsection of section 2511(a) is satisfied, along with consideration of the provisions in subsection 2511(b). **In re Z.P.**, **supra** at 1117. Initially, the focus is on the parent's conduct. **In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007). The party seeking termination has the burden of proving by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). "Only if the court determines

that the parent's conduct warrants termination of his [or her] parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (internal citations omitted).

Further, the statute "outlines certain irreducible minimum requirements of care that parents must provide for their children, and *a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his parental rights terminated*." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001) (emphasis added).

At the June 20, 2017 hearing, Mother testified via telephone conference; she testified that she was living in Florida and had not seen Child for two months. N.T. Termination Hearing, 6/20/17, at 76. She also stated that it was her intent to remain in Florida. *Id.* at 77. Prior to that, when Mother resided in Pennsylvania, her visits with Child were not consistent. Between October 2015 and June 2016, Mother had twelve positive screens for alcohol as well an abnormally diluted specimen. N.T. Termination Hearing, 6/9/17, at 16-18, 24.

Mother refused inpatient care, which, according to the testimony of Wyoming Valley Alcohol and Drug Services therapist, Zbierski, was the appropriate level of care for Mother. N.T. Termination Hearing, 3/3/17, at 23-25. She was non-compliant with alcohol and drug screens, *id.,* and was ultimately unsuccessfully discharged from treatment. *Id.* at 26. Mother was

also unsuccessfully discharged from the parenting program. N.T. Termination Hearing, 6/20/17, at 30. At the time of the June 30, 2017 hearing, Mother had not seen Child for four months. N.T. Termination Hearing, 6/30/17, at 90.

Father attended the termination hearings; he testified that he had visited Child once a week for the year prior to the hearing and had missed only a few visits. The testimony indicated, however, that Father attended only three individual counseling sessions with his substance abuse counselor over a nine-month period. *Id.* at 36-37. Counselor Losavich stated that Father was essentially a "no-show." *Id.* Case Manager Dorang, who worked with Father in the parenting program, testified that Father denied he had a drinking problem, and did not accept accountability or fault. N.T. Termination Hearing, 3/3/17, at 48-52.

The testimony indicated that neither Mother nor Father completed the services and programs in the Family Service Plan that CYS developed to address parents' ongoing issues of domestic violence, alcohol abuse, and instability in the home. In particular, both Mother and Father failed to complete drug and alcohol counseling, remain sober, complete parenting courses, complete mental health evaluations, including domestic violence counseling, follow mental health recommendations, maintain consistent contact with Child, and maintain safe and stable housing. *Id.* at 49; N.T. Termination Hearing, 3/9/17, at 36-42; N.T. Termination Hearing, 5/26/17, at 40-41; N.T. Termination Hearing, 6/20/17, at 18-20, 30-37, 110. See In

re R.T., 778 A.2d 670 (Pa. Super. 2001) (agency is not required to provide services indefinitely if parent is either unable or unwilling to apply instruction given); *see also In Interest of Lilley*, 719 A.2d 327, 332 (Pa. Super. 1998) ("If a parent fails to cooperate or appears incapable of benefiting from reasonable efforts supplied over a realistic period of time, the agency has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted.").

The court also heard testimony from CYS caseworker Patton, who stated that although there was a bond between Child and both parents, foster parents had been Child's primary caretakers for two years and Child's bond with foster parents was stronger than that between him and his natural parents. N.T. Termination Hearing, 6/30/17, at 83-90. Child knew his foster parents as "Mommy" and "Daddy," *id.* at 88, and foster parents have met Child's every need. *Id.* at 90. Patton testified that the priority was permanency in Child's life, and, in her opinion, termination would not be detrimental to Child. *Id.*

Following the hearings, the trial court determined that Child had been in placement for almost two years, and, during that time, both Mother and Father failed to remedy the circumstances that led to placement within a reasonable time. The court found termination was proper under sections 2511(a)(2), (a)(5), and (a)(8). Foster parents, who are an adoptive resource, provide Child with emotional, physical and financial support, and have done so for most of Child's young life. The trial court concluded, therefore, that the overall needs and welfare of Child are best served by termination of Mother's

and Father's parental rights. The trial court has thoroughly detailed and evaluated the testimony in its opinion, and stated its findings of fact and conclusions of law.

After our review of the notes of testimony, the parties' arguments, and the relevant law, we conclude that the court's decision is supported by competent evidence in the record. *B.L.W.*, *supra*. We, therefore rely upon Judge Rogers' thorough and well-reasoned opinion to affirm the order terminating Mother's and Father's parental rights. *See* Opinion, 6/12/15, at 10-42 (finding: at time of termination hearing, Child had been in CYS' custody and in care of foster parents for approximately 24 months; Mother and Father had over two years to remedy conditions giving rise to placement and failed to complete services offered to address alcohol and drug issues, parenting issues, and the need to maintain stable and safe housing for Child; Child's best interests and need for permanency are paramount concerns, and termination is in Child's best interests). We direct the parties to attach a copy of Judge Rogers' opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2017

- 9 -

IN THE INTEREST OF

N.S.

A Minor

: IN THE COURT OF COMMON
: PLEAS OF LUZERNE COUNTY
: ORPHAN'S COURT DIVISION
:
:
:
: NO. A-8527
:
: 1164 MDA 2017
: 1187 MDA 2017
:

RECORDED
U8/24/2017 2:49:53 PM
JUDICIAL SERVICES & RECORD
LUZERNE COUNTY
PENNSYLVANIA
Inst Num:          201748332

## MEMORANDUM ISSUED PURSUANT TO PA.R.A.P. 1925(a)

### I.   PROCEDURAL HISTORY

On February 17, 2017, Petitioner, Luzerne County Children and Youth Services (Children and Youth), filed Petitions for the Involuntary Termination of Parental Rights (Petition) of the natural father (Father) and the natural mother (Mother) for the minor child, N.S. On February 23, 2017, Children and Youth also filed an Amended Petition for the Involuntary Termination of Parental Rights of the Father.

The first hearing was held on March 3, 2017. Testimony and evidence was also received at a second hearing on March 9, 2017 and a third hearing on May 26, 2017. Receipt of testimony concluded on June 20, 2017. The hearings addressed permanency goal change petitions as well as the aforesaid petitions. This Court issued decrees terminating the parental rights of the natural Father and natural Mother on June 27, 2017 and also granted the permanency goal change to adoption.

Particularly, Mother's parental rights and Father's parental rights were both terminated pursuant to 23 Pa.C.S.A. § 2511(a) (2), §2511 (a) (5) and §2511 (a)(8). In entering the termination decrees, the Court gave primary consideration to the developmental, physical, and emotional needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b).

On July 27, 2017, Father, by and through his Court-Appointed Counsel, filed a Notice of Appeal, Nunc Pro Tunc, to the Superior Court and the requisite Statement of Matters Complained of on appeal. Mother also filed her Notice of Appeal on July 25, 2017. Mother's Statement of Matters Complained of on Appeal is as follows:

1. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient support in terminating the parental rights of the Natural Mother of N.M.S., as the grounds pursuant to 23 Pa.C.S.A. §2511 (a) (2), (5), and (8) were not established by clear and convincing evidence, and such granting of a petition to terminate parental rights was against the weight of the evidence presented by the parties.

2. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for the Court's decision that the best interests of the minor child, N.M.S. would be served by terminating Natural Mother's parental rights as required by 23 Pa.C.S.A.§2511 (b).

3. Counsel for Natural Mother reserves the right to amend this document within a reasonable time after receipt of the complete and final

2

transcript and/or the Trial Court's Opinion in Support of the June 27, 2017 Decree.

Father's Statement of Matters Complained of on Appeal is as follows:

1. The Trial Court erred in granting voluntary relinquishment of rights pursuant to the requirements of the Adoption Act of 1980, October 15, P.L. 934, No. 163 §1, et. seq.

2. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for the Court's decision in terminating parental rights insofar as the natural father has not caused the child to be without essential parental care, control, or subsistence necessary for his physical well-being.

3. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for the Court's decision that the best interests of the minor child would be served by terminating Appellant's parental rights.

4. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for the Court's decision insofar as that the conditions that gave rise to placement have changed and no longer exist, and that the natural father has remedied those circumstances.

5. The Trial Court abused its discretion, committed an error of law, and/or there was insufficient evidentiary support for the Court's

3

decision insofar as that a strong parent-child (sic) was established by testimony presented at trial.

6.      Children and Youth acted improperly in seeking to terminate Appellant's parental rights.

## II.    FINDINGS OF FACT

There is one minor child in this case. N.S. was born on October , 2014, and he is currently four (4) years old. This case involves the proposed termination of Father's parental rights and Mother's parental rights.

It is unrebutted that the minor child has been in placement in foster care since July 9, 2015. The reasons for placement included police involvement regarding a domestic dispute between the parents with the child present while the parents were intoxicated. Father was arrested and Mother became agitated and aggressive resulting in Mother's arrest. Thus, drug and alcohol abuse, mental health issues and parenting issues were the reasons for placement.

In meeting its requisite burden of proof by clear and convincing evidence regarding the termination of parental rights of Mother, Petitioner offered the testimony of Jesse Miller, clinical supervisor for Wyoming Valley Drug and Alcohol Services; Jeanne Zbierski, therapist for Wyoming Valley Drug and Alcohol Services, Melissa Stambaugh, outpatient counselor for Wyoming Valley Drug and Alcohol Services; Megan Kosik, case manager for Family Service Association; Paulette Patton, caseworker for Children and Youth Luzerne County; and Alicia Singer, senior clinician for Community Counseling Services.

Additionally, Mother and Father testified on their own behalf.

4

## III. CONCLUSIONS OF LAW

After consideration of the credible evidence as summarized above and more detailed below, the Court concludes:

(1) Children and Youth has shown by clear and convincing evidence that the parental rights of the Father to the minor child, N.S., should be terminated pursuant to 23 Pa. C.S.A. Section 2511(a)(2), 23 Pa.C.S.A. Section 2511 (a) (5) and 23 Pa.C.S.A. Section 2511 (a) (8).

(2) Children and Youth has shown by clear and convincing evidence that the parental rights of the Mother to the minor child, N.S., should be terminated pursuant to 23 Pa. C.S.A. Section 2511(a)(2), 23 Pa.C.S.A. Section 2511 (a) (5) and 23 Pa.C.S.A. Section 2511 (a) (8).

(3) Children and Youth has shown by clear and convincing evidence the termination of the parental rights of the Father, to the minor child, N.S., best serves the needs and welfare of the child pursuant to 23 Pa. C.S.A. Section 2511(b).

## IV. DISCUSSION: GROUNDS FOR TERMINATION FOR MOTHER AND FATHER

The statute permitting involuntary termination of parental rights in Pennsylvania, 23 Pa. C.S.A. Section 2511, sets forth the certain irreducible minimum requirements of care that parents must provide to their children. A parent who cannot or will not meet the requirements within a reasonable time following the intervention by the State may properly be considered unfit and may

5

properly have his or her rights terminated. *In Re: J.T. and R.T.*, 817 A.2d 505 (Pa. Super. 2002).

Termination of parental rights is an issue of constitutional dimensions because of the fundamental right of an individual to raise his or her own child. Therefore, in proceedings terminating parental rights, the Petitioner must prove by clear and convincing evidence that the statutory criteria have been met. *Santosky v. Kramer*, 455 U.S. 745 (1982), *In Re: T.R.*, 502 Pa. 165, 465 A.2d 642 (1983). However, as the Pennsylvania Supreme Court has stated "a parent's basic constitutional right to custody and rearing of his or her child is converted upon the failure to fulfill his or her parental duties to the child's right to have proper parenting in fulfillment of his or her potential in a permanent, healthy, safe environment." *In Re: J.A.S., Jr.*, 2003 Pa. Super. 112, *citing In the Interest of Lillie*, 719 A.2d 327 (Pa. Super 1998).

The Court notes that in Father's concise Statement of Matters Complained of on Appeal, in error 1, Father alleges that the Trial Court erred in granting voluntary relinquishment of rights of the Father. The Father in this case did not voluntarily relinquish his parental rights and the Court did not enter an Order on that issue. Therefore, the Court will not be addressing error 1 alleged by the Father.

## A. 23 Pa. C.S.A. Section 2511 (a) (2)

A Court may terminate parental rights under Section 2511(a) (2) when:

The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well being and the conditions of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

6

Accordingly, Mother's parental rights and Father's parental rights to the child, N.S., can be terminated under Section 2511(a) (2) of the statute. Credible testimony at the termination hearing was presented to show by clear and convincing evidence that both Mother and Father continued to struggle with their alcohol addiction. Both parents failed to complete their mental health treatment, their drug and alcohol treatment and failed to provide adequate and stable housing for the child over a two year period.

Both Mother's struggle and Father's struggle with alcohol is a repeated and continued incapacity throughout the period of the child's placement. Both Mother and Father were not compliant with services offered by the agency. As a result of Mother's issues and Father's issues with alcohol and their inability to maintain adequate and stable housing for the child, Mother and Father are unable to provide the proper and essential care for N.S. that is necessary for N.S.'s wellbeing.

1. **Facts pertaining to Mother:**

Ms. Paulette Patton testified that she is the assigned caseworker for Children and Youth Luzerne County. Ms. Patton testified that the child was born on October 1, 2014. Ms. Patton testified that she became involved in the case due to Mother's alcohol use while she was pregnant with the child and then domestic violence. *N.T.* 5/26/17 (afternoon testimony) at 3, 5. Ms. Patton testified that the child was placed on July 9, 2015 due to the parents becoming involved in a domestic dispute. According to Ms. Patton, while Father was being placed under arrest, Mother became agitated and aggressive and was also arrested. The child was

7

then taken into protective custody. *Id.* at 5-6. Ms. Patton testified that Children and Youth developed a family service plan for the family. The services provided for the family were drug and alcohol evaluation, mental health evaluation, parenting services, couples counseling and maintaining safe and stable housing. The plan was adopted by the court as a court Order. *Id.* at 6-7; N.T. 6/20/17, at 25, 26.

Ms. Patton testified that Mother did not complete the court ordered services. For instance, Mother was referred for drug and alcohol evaluation several times. She was referred for mental health services. She commenced services and then stopped. Children and Youth first attempted to refer the parents to "Concern" for a parenting education program; however, parents were required to have "clean" toxicology screens. Mother and Father could not maintain "clean" screens. Therefore, Mother and Father were referred to Family Services Association for parenting education. However, Mother was discharged unsuccessfully from parenting on December 5, 2016. Ms. Patton explained that Mother was not progressing with the goals set for her. She was missing appointments and not following recommendations. N.T. 6/20/2017 at 37.

With respect to relationship counseling, Ms. Patton stated that Mother and Father told the counselor that they did not need counseling. With respect to mental health, Mother saw a psychiatrist and also a physician's assistant for medicine management. Ms. Patton testified that at first, Mother participated in her mental health program, but then stopped participating. Mother re-engaged and then further ceased participation. In January 2017, Ms. Patton spoke to Mother about ending her services with Community Counseling. At first, Ms.

8

Patton stated that Mother denied stopping the services. Then Mother assured Ms. Patton she would return to Community Counseling. However, Ms. Patton stated that Community Counseling advised her that Mother did not return. *Id.* 7-9.

Ms. Patton further testified that she referred Mother to a drug and alcohol evaluation at Wyoming Valley Alcohol and Drug Services; however, Mother did not complete that evaluation. Ms. Patton testified that under the permanency plan, Mother was required to comply with drug screens; however, Mother was not fully compliant with toxicology screens. According to Ms. Patton, in July 2016, Mother twice refused to submit to toxicology screens. In August 2016, Mother refused four (4) times to submit to toxicology screens. In September and October of 2016, she refused screening once each month. In November 2016, she refused seven (7) times and in December 2016, she refused four (4) times. *Id.* at 9-10.

With respect to Mother's visitation schedule, Ms. Patton testified that Mother's schedule consisted of Monday and Wednesday visits each week. Mother was attending the visits until March of 2017. In March of 2017, Mother called and cancelled claiming she was ill. Mother did not call Ms. Patton again to schedule any visits. *Id.* at 10-11.

Ms. Patton testified that Mother's addiction for alcohol and the issue of domestic violence with her husband causes safety concerns for the child. Despite the entry of a Protection from Abuse Order which addressed contact between the parents, Mother returned to reside with the Father and the child. Ms. Patton testified that since placement, Mother was involved in physical altercations with

9

the Father in February, April, and July of 2016. Police responded to each altercation. *Id.* at 13. In 2017, Ms. Patton indicated that Father violated the Protection from Abuse Order by attempting to have contact with the Mother N.T. 6/9/2017 at 30-31.

Counsel for Children and Youth and counsel for Mother stipulated that between October of 2015 and June of 2016, Mother had twelve (12) positive screens for alcohol. Ms. Patton testified that between July 13, 2016 and November 9, 2016, Mother had thirteen (13) negative screens for alcohol. However, on July 25, 2016, and October 4, 2016, Mother tested positive for ethyl glucuronide, an alcohol by-product. On October 11, 2016, Mother's screen indicated an abnormally diluted specimen. *Id.* at 16-18, 24. Thus, Mother tested positive for alcohol during the aforesaid applicable time period and did not show a consistent time period of sobriety. Furthermore, Mother did not complete the drug and alcohol services provided to her which were essential to help her with her sobriety. Furthermore, as of the filing of the Petition for Termination of Mother's Parental rights, Mother did not have stable housing for the child. Housing assistance was offered to her and the child several times, yet she declined and returned to her husband.

Therefore, according to Ms. Patton, Mother has not remedied the circumstances that led to the minor child's placement. Ms. Patton emphasized that although Mother was referred for counseling numerous times, she did not follow through with the program. She also did not follow through with parenting. Furthermore, after the child was placed on July 9, 2015, Mother continued to have contact with Father and continued to be involved in domestic disputes with

10

him. Ms. Patton testified that Children and Youth's concerns were that Mother did not complete any of the services offered to her: drug and alcohol, mental health, parenting and that she did not obtain or maintain safe and stable housing. *Id.* at 32.

Jesse Miller testified that he is the clinical supervisor for Wyoming Valley Alcohol and Drug Services and has been an employee of that facility for approximately 10 years. Mr. Miller testified that Mother was referred to Wyoming Valley Alcohol and Drug by Children and Youth in the fall of 2014. Mr. Miller testified that Mother was recommended to participate in "Stepping Stones", a partial hospitalization program, due to Mother's ongoing alcohol use. Mr. Miller described Stepping Stones as an intensive outpatient program for six (6) weeks consisting of eighteen (18) sessions, three (3) days per week, four (4) hours per day. N.T. 5/26/17, p. 11. Mother did not engage in any of the recommended services. Mother did complete an evaluation on April 6, 2015 and was recommended to participate in a partial hospitalization program; however, Mother refused. Then Mother was recommended to participate in individual counseling. *Id.*at 8. Mr. Miller testified that Mother participated in two (2) evaluations and both times she was recommended to participate in a partial hospitalization program. Mother refused to participate in the programs. *Id.*at 9-10.

Ms. Jeanne Zbierski testified for Children and Youth. Ms. Zbierski testified that she is employed as a therapist at Wyoming Valley Alcohol and Drug Services. Ms. Zbierski stated that she has worked in that capacity for thirty-eight (38) years. Ms. Zbierski testified that she saw Mother for two (2) sessions on

11

September 9, 2015 and December 31, 2015. *Id.* at 15. Mother was referred to Ms. Zbierski for assessment and treatment. Ms. Zbierski indicated that Mother was scheduled to see her seven (7) times, but only saw her twice. *Id.*at 23. Ms. Zbierski further stated that Mother was first scheduled for an appointment on April 29, 2015. Mother rescheduled to June 1, 2015. However, Mother did not appear for that appointment. Mother attended the rescheduled appointment on September 9, 2015. *Id.* at 16. At the first appointment, Mother stated she was still consuming alcohol and was arrested as a result of her consumption for child endangerment. Mother was then referred to outpatient counseling services; however, Mother refused to attend. *Id.* at 16-17. Ms. Zbierski testified that Mother was then scheduled for another appointment on October 27, 2015; however, Mother did not appear for her appointment. Mother was later seen on December 31, 2011. Ms. Zbierski testified that Mother stated that she was still consuming alcohol to the point of intoxication. *Id.* at 17, 21. Ms. Zbierski stated that she strongly recommended that Mother participate in a higher level of care such as the adult partial program, due to her inability to refrain from consuming alcohol. However, Mother refused to participate in the program. *Id.* at 17. Ms. Zbierski testified that Mother was scheduled for another appointment on January 5, 2016; however, Mother did not appear. Mother was given a final appointment for February 9, 2016 and Mother again did not appear. Ms. Zbierski stated that she could not give any update on Mother's progress due to Mother's inconsistent attendance and her resistance to treatment. *Id.* Ms. Zbierski testified on cross examination that it is possible for someone to be referred to the Adult Partial Program for only one incident with alcohol and alleged domestic violence;

12

however, Ms. Zbierski emphasized that Mother did not just have one incident involving alcohol. Ms. Zbierski stated that Mother admitted at her meetings to consuming alcohol to the level of intoxication. *Id.* at 21.

Ms. Melissa Stambaugh testified that she is employed part time as an outpatient counselor at Wyoming Valley Drug and Alcohol Services. Ms. Stambaugh testified that she met Mother on July 21, 2016. She was working with Mother on an outpatient level and had regular outpatient sessions with Mother. Ms. Stambaugh testified that she recommended Mother to Relapse Prevention Group. *Id.* at 26. Ms. Stambaugh explained that Mother had problems with her alcohol usage and she was looking to educate Mother in the program to remain substance free. *Id.* at 27.

Ms. Stambaugh testified that on September 9, 2016, October 4, 2016 and October 11, 2016, she sent Mother for random urine screens. On September 9, 2016, Mother failed to attend the random urine screen. On October 4, 2016, Mother submitted to the urine screen and tested positive for alcohol. On October 11, 2016, Mother submitted to the urine screen and her sample was diluted. Ms. Stambaugh testified that on October 13, 2016, she re-evaluated Mother and recommended her to a higher level of care such as an inpatient drug and alcohol facility. *Id.* However, Mother refused to enter into an inpatient drug and alcohol facility. Therefore, according to Ms. Stambaugh, Mother was placed into an Adult Partial Program, a lower level of care. Ms. Stambaugh emphasized, however, that Mother needed the inpatient level of care. *Id.* at 28.

Ms. Stambaugh testified that Mother was not in compliance with her treatment as she refused to enter into an inpatient drug and alcohol treatment

13

facility. Ms. Stambaugh further testified that on November 11, 2016, she met with Mother for an outpatient session and sent Mother for a random urine screen. However, Mother failed to submit to the screen. Ms. Stambaugh also testified that Mother did not return to her last group on November 30, 2016. Mother left treatment. Therefore, according to Ms. Stambaugh, Mother was not in compliance with treatment. *Id.* On December 9, 2016, Ms. Stambaugh testified that she scheduled a follow-up appointment with Mother; however, Mother failed to show up for the appointment. Also, Ms. Stambaugh further added that Mother did not appear for an intake appointment on March 2, 2017. Ms. Stambaugh stated that between November 2016 and March 2017, Mother did not attend any sessions with Wyoming Valley Alcohol & Drug. However, according to Ms. Stambaugh, on March 2, 2017, Mother referred herself for care. She did not appear for her appointment. Ms. Stambaugh testified that Mother did not complete any level of care in order to address drug and alcohol use concerns. Ms. Stambaugh testified that Mother related to her that she was excessively consuming alcohol several times per week. Mother was drinking to the point where she needed to be detoxed in an inpatient facility. Mother refused to comply. *Id.* at 29.

Ms. Megan Kosik testified that she is a case manager for Family Service Association in the Intensive Family Reunification Program. *Id.* at 36. Ms. Kosik testified that she began working with Mother in September of 2016. Ms. Kosik described Mother's attendance with the program as sporadic. Mother was required to attend twelve (12) sessions. According to Ms. Kosik, Mother attended five (5) sessions. Ms. Kosik stated that Mother missed a session on

14

September 1, 2016 and another session on November 10, 2016. Then Mother lost contact with Ms. Kosik from November 10, 2016 to December 5, 2016. *Id.* at 37-38.

As part of the Intensive Family Reunification Program, Mother was required to meet four (4) goals: 1) parenting effectively; 2) maintaining her sobriety and understanding the impact of her sobriety upon her parenting; 3) seeking employment and 4) maintaining safe and stable housing. Ms. Kosik testified that during Mother's sessions, Mother would seem to understand her issues with alcohol and the steps she needed to take for treatment; however, Mother would not apply what she learned in the sessions to address her issues with alcohol. Therefore, Mother did not allow herself to benefit from the program. *Id.* 38.

Ms. Kosik testified that she observed four (4) visits between Mother and the child. Overall, Ms. Kosik testified that Mother was able to achieve the first goal which involved applying the parental skills she learned in the sessions. However, according to Ms. Kosik, Mother was not successful with the second goal which involved gaining knowledge on healthy relationships and understanding how Mother's decisions affect her ability to parent her child. According to Ms. Kosik, Mother stated to her multiple times during a session on September 15, 2016 that she would choose her husband over her children and had already done so several times. *Id.* 39-40. Ms. Kosik testified that Mother was also not successful with the third goal which involved maintaining Mother's sobriety and understanding its effects. Ms. Kosik testified that Mother had several relapses with alcohol while she had a Protection from Abuse Order from her husband and

15

her husband also had a reciprocal Protection from Abuse Order. Ms. Kosik testified that Mother and Father would consume alcohol together. Ms. Kosik also stated that Mother related to her that there was a physical altercation that occurred on September 15, 2016 at a bar in which Mother was consuming alcohol and the police were involved. Ms. Kosik stated that Mother, on a monthly basis, would leave father and then return to him. For instance, Mother stated she would seek services from a Domestic Violence Center and then a month later, she would return to her husband. *Id.* 40-41.

Ms. Kosik further stated that Mother did not meet the fourth goal which involved seeking employment and securing housing. Ms. Kosik testified that Mother was in a Domestic Violence Center and a Bridge Program was set up for Mother to secure housing. However, Mother declined that opportunity and left without notice and returned to her husband. Mother was also in the domestic violence shelter again and she applied for housing at Sherman Hills Apartments. Mother was approved for housing; however, Mother declined again and left to return to her husband. *Id.* at 41-42; N.T. 5/26/16 (afternoon testimony) at11-12. Ms. Kosik, therefore, closed Mother's case for non-compliance on December 5, 2016. Ms. Kosik explained that as part of the intensive program, there must be a minimum of weekly visits. Ms. Kosik reiterated that Mother cancelled her appointment on September 1, 2016 and November 1, 2016 and there was not contact between November 8, 2016 and November 17, 2016. Ms. Kosik stated that Mother did not return any of her telephone calls or messages. Therefore, Mother was not compliant with the program due to her lack of contact.

16

According to Ms. Kosik, Mother did not successfully complete the services with the program. N.T. 5/26/16 (morning testimony) at 42.

On cross examination by the Guardian Ad Litem, Ms. Kosik testified that when Mother returned to Father, she placed the child in a dangerous situation. Ms. Kosik explained that the initial referral was a domestic dispute which involved the police arriving at the parents' residence and finding Mother and Father intoxicated, the child without proper hygiene and the residence in filthy condition. *Id.* 48.

Alicia Singer testified that she is employed at Community Counseling Services as a senior clinician. Ms. Singer indicated that Mother has not been compliant with the services from 2015 to the time of the hearing. N.T. 6/20, 2017. Ms. Singer testified that Mother appeared for an intake on March 27, 2015 and completed the assessment. Ms. Singer indicated that in 2015, Mother was scheduled for eleven (11) appointments that year. Mother only attended five (5) appointments, four of them were doctor's appointments and the other was a therapy appointment. She failed to attend six (6) appointments, five (5) of them were physician appointments and the other was a therapy appointment. Mother failed to appear for her appointments without calling to cancel. Therefore, according to Ms. Singer, Mother was not compliant in 2015. *Id.* at 18-19.

Ms. Singer testified that Mother was also not compliant in 2016. Mother was required to attend twelve (12) appointments for that year. Mother only attended six (6) appointments, two therapy appointments and four physician appointments. She failed to attend two (2) therapy appointments and three (3) physician appointments. On April 13, 2016, Mother cancelled a physician

17

appointment. According to Ms. Singer, the last scheduled appointment Mother had with Community Counseling Services was April 21, 2017. However, Mother cancelled the appointment. *Id.* at 19-20. Ms. Singer testified that Mother received medication management and individual therapy services. However, according to Ms. Singer's records, the last appointment Mother had with her psychiatrist for her medication management was June 2, 2016. Since that date, Ms. Singer testified that Mother failed to keep any other appointments. *Id.* at 20-21. Ms. Singer stated that Mother did not have any appointments in 2017. Ms. Singer indicated that the records do not show that Mother successfully completed treatment, nor do the records show that Mother was compliant with the services.

Mother testified that she currently resides with her mother and the child's half sibling in Florida. She testified that the home has four (4) bedrooms and is clean and appropriate for living. N.T. 6/20/17 at 63. Ms. S⸱    ⸱, however, did not offer any testimony on steps she had taken to remedy her addiction to alcohol and her mental health. Although she may have remedied housing concerns by residing with her mother in Florida, there were additional grave concerns that Mother had to overcome in order to safely parent the child. She did not.

2. **Facts pertaining to Father:**

Ms. Paulette Patton, an ongoing caseworker for Children and Youth, testified that according to the permanency plan, Father was ordered to 1) undergo a mental health evaluation and follow all recommendations; 2) undergo a drug and alcohol evaluation and follow all recommendation;3) attend parenting sessions and 4) maintain safe and stable housing. Ms. Patton testified that Father was referred to Community Counseling; however, he never completed

18

services. Father was referred in October of 2014. He was referred again in March of 2015, but he did not meet with a psychiatrist. N.T. 3/9/17 at 41.

According to Ms. Alicia Singer, the senior clinician, at Community Counseling Services, Father failed an intake appointment on January 6, 2015. He appeared for an intake appointment on January 29, 2015. On April 22, 2015, he canceled an appointment for his evaluation with a psychiatrist. On August 12, 2015, Father missed another physician appointment. Therefore, pursuant to Ms. Singer's records, Father attended one appointment at Community Counseling which was the intake appointment on January 29, 2015. *Id.* at 27-28.

Ms. Patton testified that Father was referred to a parenting education course in November of 2015; however, he was not able to participate because he was required to be substance free to remain in the program. Father was then referred to the Intensive Family Reunification program in 2016, but according to Ms. Patton, he was discharged from the program. Ms. Patton testified that with respect to urine screens, Father was also not compliant. Ms. Patton testified that Father would be given a drug screen request whenever he came for a visit; however, Father refused to go. Father, at times, refused to take the drug screen slip when it was given to him. *Id.* at 41-42, 44-45. Ms. Patton did indicate that between June and January of 2017, Father did submit to some toxicology screens. *Id.* at 43. Ms. Patton testified that Father attended drug and alcohol sessions sporadically, but stopped participating at the end of 2015. *Id.* at 41.

Father testified that many times, he was not given paperwork to submit to a toxicology screen. He testified that he believed he did not have a substance abuse issue. Father also denied being intoxicated at the time of placement and

19

placed complete blame on the Mother. Father also testified that since he did not have a substance abuse issue and he did not require the drug and alcohol services. N.T. 6/20/17 at 77-78 Eventhough Father testified that he did not have a substance abuse issue, he then changed his testimony and stated that he did have a problem with alcohol due to stress, but that he now has it under control. *Id.* at 94-101-102. This Court finds Father's testimony inconsistent and not credible.

Ms. Patton testified that Father was also referred to relationship counseling. Father was referred to Community Counseling for that purpose; however, Father appeared with Mother at Community Counseling and stated that he did not need relationship counseling even though he and Mother were both arrested for an incident relating to domestic violence that same year. Children and Youth referred the parents for relationship counseling at Community Counseling Services; however, Community Counseling would no longer permit them to attend as parents stated they did not need counseling. Ms. Patton testified that Children and Youth referred the parents to Family Services Association. However, that agency only agreed to see them separately due to the incidence of domestic violence in their relationship. Father participated in one appointment. Father did not appear for his next appointment and then did not reschedule for another appointment. *Id.* at 45-46.

Ms. Patton testified that she was concerned that Father has not remedied any of the issues that led to placement of his child. Domestic violence was one of the reasons for placement, yet Father did not participate in any of the services. Ms. Patton testified that Mother informed the agency that she had a Protection

from Abuse Order against Father and that he had a reciprocal Order against her. Both parents were arrested in 2015, due to an incident involving domestic violence. *Id.* at 46. According to Ms. Patton, Father violated the Protection from Abuse Order in 2016 and 2017.

With respect to both Mother and Father, based on the testimony of various witnesses, summarized above, and based on the evidence presented to the Court, the Court finds that subsequent to the placement of the child on July 9, 2015, both Mother and Father did not complete the required services for mental health treatment and drug and alcohol treatment. Also, as of the date of filing of the Petition for Termination of Parental Rights both Mother and Father were not able to maintain adequate safe housing for the child due to their domestic abuse toward one another and continuing to reside together despite the abuse. Therefore, the Court finds that both Mother and Father have not been able to remedy the conditions that gave rise to the placement of the child.

Unlike 23 Pa.C.S.A. § 2511(a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a) (2) should not be read to compel courts to ignore a child's need for a stable home and . . . this is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." (our emphasis added) *In re E.A.P.*, 944 A.2d 79 (Pa. Super 2008).

Given the overwhelming evidence and testimony, it is clear that both Mother and Father have received and/or has been offered extensive services over

21

the years and they have failed to complete the services or even benefit from the services.

At this juncture, the child's right to have proper parenting in fulfillment of his potential in a permanent, healthy, safe environment outweighs Mother's and Father's interest.. *In Re: J.A.S., Jr.*, 2003 Pa. Super. 112, *citing In the Interest of Lillie*, 719 A.2d 327 (Pa. Super 1998).

## V. DISCUSSION: GROUNDS FOR TERMINATION FOR MOTHER AND FATHER

### A. 23 Pa. C.S.A. Section 2511 (a)(5)

A Court may terminate the parental rights under Section 2511(a)(5) when:

> The child has been removed from the care of the parent by the Court or under voluntary agreement with an agency for a period of at least six months, the conditions of which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

Mother's parental rights and Father's parental rights may also be terminated under this provision of the Statute. Under 23 Pa.C.S.A. Section 2511(a) (5), the agency must show: (1) the child has been removed from the care of the parent by the Court for a period of at least six months; (2) The conditions giving rise to placement continue to exist, (3) Those conditions will not be remedied in a reasonable period of time, and (4) Termination of parental rights would best serve the needs and welfare of the child.

### (1) (2) CHILD REMOVED BY THE COURT FOR A PERIOD OF A LEAST SIX MONTHS AND CONDITIONS CONTINUING TO EXIST

22

The child was originally placed on July 9, 2015 due to an emergency shelter care order issued by the Court. Therefore, the child has been removed from his Mother and Father for at least six (6) months. It is also clear through the testimony outlined above, that the natural Mother and Father have been unable to resolve the issues that gave rise to the placement of the minor child, N.S., i.e. inability to stay drug free, inability to complete mental health services and inability to complete parenting sessions. Although Father testified that he has been sober and no longer has an issue with alcohol. Father did not present independent evidence verifying his statements. The evidence the Court has is Father's refusal to attend drug screens. Furthermore, although Mother stated she moved to Florida and resides in a home with her Mother that is appropriate for the child, Mother never provided evidence to support the contention. Mother left for Florida and only notified her counsel of her change in residence. Despite the change in residence, Mother's issue with alcohol abuse is a significant factor in this case which Mother has yet to remedy. The overwhelming evidence shows that all of these issues have yet to be remedied by Mother and Father as both parents never completed the services ordered by the Court to address their alcohol and drug issue, their mental health issue, parenting issues and the need to maintain safe and stable housing for the child.

The Court has recognized this issue above in its analysis of Section 2511(a)(2) and finds the same considerations apply for 2511 (a)(5) that have already been discussed extensively in this memorandum. Furthermore, the Court applies this same reasoning in concluding that the natural Mother and natural Father failed

23

to remedy the conditions that originally gave rise to placement of their minor child, N.S.

## (2)REMEDY OF CONDITIONS IN REASONABLE TIME

Both Mother and Father have had over two (2) years to remedy the conditions which gave rise to placement, yet the evidence shows that they have been unable to make any progress. Mother attempted to rectify safe and stable housing by indicating that she moved to Florida and that she is no longer residing with Father. Despite Mother's attempt to rectify safe and stable housing for the child, the fact remains that Mother did not remedy her issue with drug and alcohol and mental health. Father attempted to rectify his issue with alcohol by stating that he is no longer consuming alcohol, yet produced no evidence verifying his statements. This Court finds that Father has been and is unable to remedy the conditions that gave rise to placement of the minor child within a reasonable time period.

## (3) NEEDS AND WELFARE OF THE CHILD

The term "needs and welfare" of a child refers to both tangible and intangible needs. The intangible needs of a child include love, comfort, security and closeness. *In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 747 (1992). There is nothing in the record that shows that the natural Mother and Father are presently capable of providing a safe, secure environment for the minor child.

Parental duty is best understood in relation to the needs of a child. These needs, both physical and emotional, cannot be met by a mere passive interest in the development of the child. Meeting a child's needs is a positive duty that

24

requires affirmative performance. *In re Shives*, 363 Pa. Super. 225, 525 A.2d 801, 802 (1987).

A parent is not relieved of his or her responsibility relating to the needs of a child when a child has been placed in foster care. A non-custodial parent has a duty to exert himself to take and maintain a place of importance in the child's life. *In re Adoption of M.J.H.*, 348 Pa. Super. 65, 501 A.2d 648 (1985). A parent must demonstrate a continuing interest in the child and make a genuine effort to maintain communication and association with the child. *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975). Moreover, a parent with a child in foster care has an affirmative duty to work toward the return of the child. *In Re: William L.*, 477 Pa. 322, 383 A.2d 1228 (1978).

When considering the needs and welfare of the child, it is also important for the court to consider the bond between the parent and the child because severance of a strong parental bond can have a detrimental impact on the child. *Matsock*, *supra*.

The Petitioner presented testimony regarding the best interest of the child. Ms. Paulette Patton testified that the child has been placed with the B    family since August of 2015. The family consists of foster mother and foster father, their biological child and one other adoptive child. The child has been assimilated into the family. He is accepted as a family member. He celebrates his birthdays and all holidays with the family. He vacations with the family. Ms. Patton testified that the child is involved in gymnastic class called "Mommy & Me Gymnastics." N.T. 6/20/2017 at 83.

Ms. Patton testified that she has observed the family with the child on a monthly basis since August of 2015. Ms. Patton testified that the foster parents meet the child's physical needs. They offer him a home, clothing, food and transport him to physician appointments. The foster parents also meet the child's developmental needs. They insured that his speech was well developed. They toilet trained him and taught him to develop from bottle feeding to regular food. Ms. Patton testified that the foster parents also meet the child's emotional needs. The foster parents and the child are very affectionate toward each other. They hug each other. Ms. Patton further added that when the child is upset, the foster parents comfort him. Also, if the child misbehaves, they provided appropriate discipline measures such as "time-out". *Id.* at 84-85.

Ms. Patton testified that she did observe the natural mother's interaction with the child. Ms. Patton indicated that at the last visit she had with the child, the Mother put the child to sleep so that she could spend the time using her cell phone. Ms. Patton testified that she thought that the child has a bond with his Mother in that he is happy to see her. However, the child can also easily move away from his Mother and go with the foster parents. Ms. Patton testified that she was able to observe the interaction between the natural father and the child. Ms. Patton stated that there is a bond between them; however, the child does not reach for him or seem excited to see him. Ms. Patton also testified that at the last visit in June of 2017, Father did not show up for a visit with the child. The child was not upset when the Father did not appear. *Id.* at 86-87.

Ms. Patton testified that there is a very strong bond between the foster parents and the child. The child becomes upset if he is separated from them and

26

calls them"Mommy" and "Daddy". They are always happy to one another. Whenever the foster parents see the child, they pick him up and hug him. Ms. Patton testified that the bond between the foster parents and the child is much stronger than the bond between the natural parents and the child. Ms. Patton explained that the foster parents have been the primary caretakers of the child for the past two years and he looks to them for all his needs. *Id.* at 88-90

Ms. Patton further testified that should the parental rights be terminated, there would not be any detrimental effect on the child. The child would have permanency. Ms. Patton further believed that adoption of the child by the foster parents would be in the best interest of the child. *Id.* at 90-91. The foster parents also understand that should they adopt the child, he would become their full responsibility and would support the child financially. *Id.* at 109-110.

Even if the Court were to consider Father's testimony on bonding, the Court notes the following language of the Superior Court in Re: K.K.R.-S., 958 A.2nd 529, 535 (Pa. Super 2008).

"A child's feelings toward a parent are relevant to the section 2511 (b) analysis. Nonetheless, concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent it not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. "The continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding".

In the case *sub judice* Mother and Father have failed to correct their behavior in their inability to remain drug and alcohol free, their inability to comply with mental health treatment and their lack of proof in demonstrating

27

that they have safe and stable housing for the child. The overwhelming evidence shows that all of these issues have yet to be remedied by both Mother and Father. The Court finds that the termination of Mother's parental rights and Father's parental rights would best serve the needs and welfare of the child.

Accordingly, the court finds that the termination of Father's parental rights would best serve the needs and welfare of the child.

## VI.    DISCUSSION: GROUNDS FOR TERMINATION FOR FATHER.

### A.    23 Pa. C.S.A. Section 2511 (a) (8)

A Court may terminate the parental rights under Section 2511(a) (8) when:

The child has been removed from the care of the parent by the Court or under Voluntary agreement with an agency, twelve (12) months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination would best serve the needs and welfare of the child.

Parental rights may be terminated under this provision of the Statute. Under 23 Pa.C.S.A. Section 2511(a)(8), the agency must show: (1) The child has been removed for at least twelve (12) months, (2) The conditions that gave rise to placement continue to exist, and (3) Termination of parental rights would best serve the needs and welfare of the child.

### (1)  TIME PERIOD OF REMOVAL OF CHILD

It is undisputed that minor child, N.S., have been removed from the custody of Mother and Father, since July 9, 2015. Accordingly, this removal has persisted well in excess of the statutorily required twelve (12) months since the date of the child's placement. Thus, the requisite minimum of at least 12 months

28

from removal of minor child from Mother and Father have elapsed so as to comply with this section of 2511(8).

### (2) CONDITIONS CONTINUING TO EXIST

The conditions that led to the child's removal from Mother's care and Father's care and into placement were Mother's inability and Father's inability to remain drug free during treatment, their inability to provide and maintain safe, stable and adequate housing due to the domestic violence between them, their inability to complete the drug and alcohol treatment and mental health treatment and their inability to complete parenting sessions. The Court has performed the above extensive analysis in taking testimony and finding credible evidence. The Court thus concludes that Mother and Father failed to derive any benefit from services offered to them. Therefore, the conditions that gave rise to placement continue to exist.

In discussing and finding that conditions which led to placement continue to exist, the Court incorporates its reasoning and the testimony of all witnesses already discussed in this Memorandum found in the section addressing 23 PA. C.S. Section 2511 (a) (2).

### (3) NEEDS AND WELFARE OF THE CHILD

Once the Court has found that involuntary termination of parental rights is warranted under the Act, the court must then "give primary consideration to the developmental, physical and emotional needs and welfare of the child."

The Court has done this and finds the same considerations apply that have already been discussed extensively in this memorandum. Furthermore, the Court

applies the same reasoning for concluding that these needs will be served by the termination of Mother's parental rights and Father's parental rights.

## VII. ADDITIONAL CONSIDERATIONS UNDER 23 P.A.C.S.A. SECTION 2511(b)

### FOR MOTHER AND FATHER

#### A. ENVIRONMENTAL FACTORS

Title 23 Pa. C.S.A. Section 2511(b) specifies that a court may not terminate the parental rights "solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing, and medical care if found to be beyond the control of the parent." In fact, in this case, Mother more than once was offered housing with the child, yet Mother declined and returned to reside with the Father resulting in more domestic abuse issues.

As "environmental factors beyond the control of Father" was not the linchpin in the placement of the minor child and because of the presence of other, independent factors utilized in the placement of N.S., this consideration does not apply and will not be addressed.

#### B. NEEDS AND WELFARE OF THE CHILD

Once the Court has found that involuntary termination of parental rights is warranted under the Act, the court must then "give primary consideration to the developmental, physical and emotional needs and welfare of the child." This is to be a separate inquiry and even where the court has already considered the needs and the welfare of the child under one of the grounds of termination, the court must do so again. *In re Matsock*, 611 A.2d 738 (1992).

30

The Court has done this and finds the same considerations apply that have already been discussed extensively in this memorandum. Furthermore, the Court applies the same reasoning for concluding that these needs will be served by the termination of Mother's parental rights and Father's parental rights.

## VIII. ADOPTION AND SAFE FAMILIES ACT (ASFA) CONSIDERATIONS

Recently, the Pennsylvania Superior Court relied upon the Adoption and Safe Families Act (ASFA) in *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010). The goal of ASFA was described as follows:

> Succinctly, this means that when a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require CYS and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is contemplated this process realistically should be completed within 18 months.

*Id.* at 1119-1120 citing *In re G.P.*, 851 A.2d 967, 975-976 (Pa. Super. 2004)

The Court also provided that "above all else . . . adequate consideration must be given to the needs and welfare of the child . . . A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *Id.* at 1121 (internal citations omitted).

In reversing the trial court and terminating the natural parent's parental rights, the Superior Court held:

> "ASFA-related policies now demand reasonable efforts within a reasonable time to remedy parental incapacity. Z.P. has already been in foster care for the first two years of his life, and his need for permanency should not be suspended, where there is little rational prospect of timely reunification."

*Id.* at 1125-26.

31

These ASFA-related policies are applicable in the present case of minor child, N.S. The child has been in placement since July 9, 2015, twenty-three (23) months, as of the conclusion of the last hearing on June 20, 2017. Accordingly, a reasonable time of 18 months has long expired to remedy parental incapacity and there is little rational prospect of the timely reunification of N.S. to his Mother and Father.

## IX. CONCLUSION

Finally, the Court notes that the Guardian Ad Litem expressed on the record, after having been present for all the testimony and evidence, her belief that the Petitioner has sustained its burden of proof by clear and convincing evidence and that the parental rights of Mother and Father be terminated as it is in the minor child's best interest to be free for adoption.

This court agrees with the Guardian Ad Litem's position and finds that Mother and Father cannot offer to their child the basic physical, developmental and emotional needs that their child requires and should have throughout his future life. Mother and Father have been given ample time to address and remedy their problems but have failed to successfully do so. The Court finds that they are not able to meet their child's needs. In stark contrast, the foster parents have amply demonstrated they meet the physical, developmental and emotional needs of the minor child, N.S. and he has thrived under their care. The child needs consistency and deserves a permanent home with loving capable parents. The only way to provide this is to terminate the rights of Mother and Father.

32

Clearly it is in the child's best interest to do so.

Respectfully submitted,

BY THE COURT,

_____
JENNIFER L. ROGERS                    J.

DATE: _____

COPIES TO:

Jena Braunsberg, Esquire
Children & Youth Services
of Luzerne County
111 North Pennsylvania Boulevard
Wilkes-Barre, PA 18701

Stephen Palubinski, Esquire
Attorney for Mother
P.O. Box 656
Nuremberg, PA 18241

Robert L. Kobilinski, Esquire
Attorney for Father
4940 Birney Avenue
Moosic, PA 18507

Maria M. Bertha, Esquire
Guardian Ad Litem
421 South State Street
Clarks Summit, PA 18411